FILED
2020 Jun-24  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| **CLYDE SAVAGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.:** |
| **VS.** | ) | |
| | ) | |
| **J AND J TRANSPORTS OF** | ) | |
| **ALABAMA, INC., RICKY** | ) | **JURY DEMANDED** |
| **WITT, and DUSTIN WITT** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW Plaintiff Clyde Savage, by and through his attorneys, in the above styled cause, and for his Complaint against Defendants, J and J Transports of Alabama, Inc. ("J & J"), Ricky Witt and Dustin Witt, alleges as follows:

## NATURE OF THE ACTION

1.      J&J is a regulated motor carrier that provides transportation of property in interstate commerce under authority issued by the U.S. Department of Transportation ("DOT").  J&J transports property in equipment leased from independent truckers (known as "owner-operators") including the Plaintiff, Clyde Savage.  Under federal law and regulations, "authorized motor carriers" like J&J may perform authorized transportation

in equipment they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12. See 49 C.F.R. § 376.11(a).  Authorized motor carriers are then also required by regulation to follow those required lease provisions. 49 C.F.R. § 376.12.

2.     Defendants have engaged in a pattern and practice of conduct violating its obligations under 49 C.F.R. § 376.12 to Plaintiff.

## JURISDICTION AND VENUE

3.     This action arises under 49 U.S.C. §§ 14102 and 14704 et seq. and 49 C.F.R. Part 376 et seq., for violation of the statutes and regulations governing the terms and conditions pursuant to which truck owner-operators lease equipment to authorized motor carriers for the transport of property.

4.     Jurisdiction of this matter is granted to this court by 28 U.S.C. §§ 1331 (federal question jurisdiction), and 1337 (proceedings arising under an act of Congress regulating commerce).  The causes of action alleged here arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce, including 49 U.S.C. §§ 13501, 14102 and 14704(a)(l) and (2), and 49 C.F.R. § 376 et seq.  Violations of the federal regulations are privately actionable under 49 U.S.C. § 14704(a)(l) and (2).

5.      Jurisdiction and venue is proper in this Court pursuant to 28 U.S.C. § 139l(b) in that J & J is incorporated in Alabama and maintains offices in this the Northern District of Alabama and because a part of the events giving rise to the claims raised herein occurred in this district and state.

## PARTIES

6.      Plaintiff Clyde Savage (hereinafter "Plaintiff" or "Savage"), is an adult, nineteen (19) years of age or over, and is a resident of Walker County, Alabama.  Plaintiff was, at all times relevant to this Complaint, a trucking owner-operator who has leased motor vehicle equipment, with a driver, to J & J within the purview of 49 U.S.C. § 14102.

7.      Plaintiff is an "owner" within the meaning of 49 C.F.R. § 376.2(d), and "lessor", within the meaning of 49 C.F.R.§ 376.2(t).

8.      Each lease agreement entered between Plaintiff and J&J constitutes a "lease" within the meaning of 49 C.F.R. § 376.2(e).

9.      The vehicles Plaintiff provided to J&J for use are "equipment" within the meaning of 49 C.F.R. § 376.2(b).

10.      Defendant J&J is an entity registered to do business in the State of Alabama, and is conducting business, among other locations, in Walker and Marion Counties, which are in the Jasper Division of the Northern

District of Alabama.   J&J is a regulated motor carrier, primarily engaged in the enterprise of providing transportation services to the shipping public under authority granted by DOT and formerly the ICC.  During all times material to this case, J&J is and has been an "authorized carrier" within the meaning of 49 C.F.R.§ 376.2(a).

11.     Defendant Ricky Witt, upon information and belief, is a resident of Alabama and is an adult of at least the age of nineteen (19). Ricky Witt is the owner and director of J&J.

12.     Defendant Dustin Witt, upon information and belief, is a resident of Alabama and is an adult of at least the age of nineteen (19). Dustin Witt is a manager of J&J.

## FEDERAL  REGULATORY  SETTING

13.     Leases entered into between authorized carriers, such as J&J, and owner-operators, such as Plaintiff, must conform to statutory and regulatory standards. 49C.F.R. § 376.11(a); 49 C.F.R. § 376.12; see also 49 U.S.C. § 14102(a).  This regulatory framework for the trucking industry, colloquially "Truth-in-Leasing," requires literal compliance.

14.     Individuals who are damaged by an authorized carrier's violations of the Truth-in-Leasing Regulations may bring an action for

injunctive relief and/or damages against the violator under 49 U.S.C. §

14704(a)(l) and (2), as well as recover attorney's fees pursuant to 49 U.S.C.

§14704(e).

15.    Pursuant to 40 C.F.R §§ 376.1l(a) and 376.12, it is a violation

of the Truth-in-Leasing Regulations when either a lease fails to contain a

required provision, or when the authorized carrier fails to perform in

accordance with the regulations.  The regulations provide that the lease

contain specific provisions and that the regulated motor carrier adhere to

those terms. 49 C.F.R. §§ 376.11 and 376.12

16.    The requirements of the Truth-in-Leasing Regulations relevant

to this complaint are the following:

(A)    49 C.F.R. § 376.12, which requires that the mandatory

provisions of the written lease required under 49 C.F.R. § 376.11(a)

"shall be adhered to and performed";

(B)    49 C.F.R. § 376.12(d), which requires that the amount of the

independent trucker's compensation be clearly stated on the face of the

lease or in an attached addendum;

(C)    49 C.F.R. § 376.12(g), which requires the authorized carrier or

its agent to give the independent trucker a rated freight bill or other

document containing the same information at the time of settlement; and

(D)    49 C.F.R. § 376.12(j), which requires full disclosure of any funds or items that the authorized carrier "charges back", in any manner, itemized or not, to the owner-operator.

## GENERAL FACTUAL BACKGROUND

17.    Plaintiff adopts by reference each and every material averment set out above as if fully set forth herein.

18.    On or about March 26, 2018, Plaintiff, a trucking owner-operator, and J&J entered into the first of two successive identical annual contracts/leases through which Plaintiff was to and did provide a truck and driver to J&J, described in the agreements as "a motor common carrier authorized by the Federal Motor Carrier Safety Administration to provide transportation of property under contract with shippers and receivers of general commodities."

19.    Per the contract/leases, for providing the truck and driver on assigned loads, the Plaintiff was to be compensated by J&J with "75% of gross revenues" paid by the shippers on those loads.

20.     The "gross revenues" on which the Plaintiff's compensation was calculated by the Defendants, were the gross revenues received by the Defendants from those shippers and receivers of general commodities for whom the Defendants were providing transportation/trucking services.

21.     For example, Defendants contracted with Constellium Aluminum, a shipper, and transported, via truck loads, commodities such as aluminum for Constellium, and was compensated by Constellium for transporting those loads.

22.     Plaintiff, per his contracts with J&J, provided a truck and a driver to Defendants, which Defendants used to transport the loads for Constellium, and other shippers and recievers.

23.     As such, Plaintiff was to be compensated, per load, "75% of gross revenues for each load picked up and successfully delivered"[1] by J&J for Constellium (and all other shippers for which J&J used Plaintiff to deliver loads).

24.     Unbeknownst to Plaintiff, Defendants, specifically including Ricky Witt and Dustin Witt, made numerous negligent, reckless, and/or intentional misrepresentations regarding the actual amounts of the gross revenues that they received from the shippers, and on which Plaintiff's

---

[1] The contracts set out procedures for deductions and proof of allegedly unsuccessful loads, such as damaged loads.

compensation from Defendants was calculated, that adversely affected

Plaintiff, as set forth more fully below.

25.    Throughout the time of the parties' contracting with each other,

Defendants provided Plaintiff with "Driver Pay Report" on which

Defendants stated and represented, for each load on which the Plaintiff

provided services, the alleged gross revenue amount paid to Defendants by

the shippers for that load.

26.    On the Drivers Pay Reports, Defendants showed the

multiplication of each of those load amounts by 75% to calculate a "Total

Pay" figure which Defendants represented to Plaintiff was 75% of the gross

revenues of the loads, which made the basis of Defendants' compensation to

Plaintiff for those loads.

27.    Unbeknownst to Plaintiff, Defendants, specifically including

Ricky Witt and Dustin Witt, negligently, recklessly, and/or intentional

misrepresented the actual amounts of those gross revenues, including, but

not limited to, by failing to include revenues that, upon information and

belief, were paid to Defendants by the shippers for fuel surcharges.[2]

28.    At times, Defendants simply unilaterally put a lower amount of

gross revenues than, upon information and belief, they actually received

---

[2] Per the contracts, Plaintiff paid for the fuel on each load.  J&J would front the money
for the fuel purchases at the fuel pumps, but then be reimbursed by Plaintiff.

from the shippers, even independent of the fuel surcharge revenues, on the Drivers Pay Sheets and compensated Plaintiff on a calculation of the inaccurate and false lower amount.

29.    To help perpetuate this scheme, in or around September 2019, Ricky Witt and Dustin Witt called and held a meeting with its owner-operators, including Plaintiff.  At this meeting, Dustin Witt, with Ricky Witt next to him, told the owner-operators, including the Plaintiff, that one of their main shippers, for whom the Plaintiff drove many loads, Constellium, had changed their contract with J&J to reduce the contract rates (and thus, gross revenues) that they were paying J&J, which would correspondingly reduce the owner-operators' compensation, including Plaintiff, as their compensation was a percentage (75%) of what the shippers paid the Defendants for each load.

30.    Defendants then did, in fact, pay Plaintiff reduced compensation on Constellium loads, and provided Plaintiff with Driver Pay Sheets on which Defendants represented that the contracted-for gross revenues J&J received from Constellium on loads was, in fact, lower than had been the case in the past on similar and equivalent loads.

31.    After a period of time during which Plaintiff received lower compensation on loads that he delivered for Defendants, which Defendants

told Plaintiff was due to the lower gross revenues, Plaintiff, per his contract and the law, asked Defendants for the documentation of what the shippers, including Constellium, were paying Defendants on his loads, and which could verify the gross revenue figures that Defendants were using to calculate his compensation.  Defendants refused to provide him any such documentation.

32.    As such, Plaintiff worked to gain access to the actual gross revenue figures that the shippers were paying the Defendants directly from the shippers themselves on some of those lower compensation loads.

33.    By getting the accurate figures directly from the shippers, which are the actual source of the gross revenues, and comparing them to the gross revenues that the Defendants had represented to the Plaintiff that those shippers had paid, and on which Plaintiff's compensation had been based, Plaintiff discovered that Defendants had been using falsely lower gross revenues to calculate his compensation.

34.    Specifically, Plaintiff discovered, for example, directly from Constellium itself, that not only had it been paying higher load rates than Defendants had represented was the case, that it had also been paying fuel surcharges to Defendants on every load, 100% of which Defendants had kept for themselves, and failed to include in the gross revenues.  This was

despite the contract that called for Plaintiff to receive "75% of gross revenues," and the fact that the Plaintiff bore 100% of the fuel costs of the loads.

35.    Plaintiff had reasonably relied on Defendants' representations of the gross revenues received by them from the shippers.  As a result of his reasonable reliance on Defendants' representations, Plaintiff drove many, many loads for Defendants for which Plaintiff unknowingly received less compensation than he should have received, with the Defendants wrongfully pocketing the difference.

36.    On or about May 20, 2020, Plaintiff took the real gross revenue numbers that he had discovered to Ricky Witt, and asked for explanation as to why they were different than the gross revenue numbers that Defendants had put on the Drivers Pay Sheets for the exact same loads.  Ricky Witt told Plaintiff that "the contract allows us to do anything we want".  Other than that, Defendants refused to give any explanation for the false and inaccurate gross revenue amounts that they had provided to Plaintiff, chose not to answer any of the Plaintiff's questions about the fuel surcharges, or state any reason why they had given Plaintiff gross revenue rates that were different that the gross revenue rates that the shippers had provided him on the exact same loads.

37.     Further, since that time, Plaintiff has no longer received any assignments from Defendants or driven any loads for Defendants.

## COUNT I

### Unlawful Reductions of Compensation

### (in violation of 49 C.F.R. § 376.12)

38.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 37 of this Complaint as if set out fully herein.

39.     Plaintiff, an owner-operator, receives compensation from J&J based on a fixed percentage of the gross revenue paid by the shipper. J&J, in violation of Plaintiff's lease, and the Truth-in-Leasing regulations, reduces and understates the gross revenue actually received from the shipper on Plaintiff's settlements before it calculates the compensation due the Plaintiff. By reporting to Plaintiff a reduced amount in gross revenue received from the shipper, J&J underpaid Plaintiff by an amount that equals the amount of the reduction of gross revenue times the percentage of gross revenue specified in the lease.

40.     As a direct and proximate result of J&J's violations of 49 C.F.R.

§376.12, which requires adherence and performance of the mandatory lease

provisions, Plaintiff has been deprived of sums rightfully belonging to him

and has incurred substantial monetary damages.


## COUNT II

### Failure to Provide Rated Freight Bill or Similar Required

### Documentation on Request

### (in violation of 49 C.F.R. § 376.12 (g))

41.    Plaintiff re-alleges and incorporates the allegations of

paragraphs 1 through 40 of this Complaint as if set out fully herein.

42.    Owner-operators, including Plaintiff, receive compensation

from J&J based on fixed percentage of the gross revenue paid by the

shipper.

43.    Plaintiff requested of J&J, by requests to his supervisors, Ricky

Witt and Dustin Witt, multiple times, that J&J provide him with documents

from which the rates and charges are computed for shipments that he carried

for J&J. In violation of 49 C.F.R. § 376.12 (g), Plaintiff's supervisors failed

and refused to provide copies of that documentation.

44.    J&J's failure to provide copies of the rated freight bills, or other

forms of freight documentation on request, represents a J&J company-wide

practice to refuse or ignore requests for information that would enable owner-operators to verify the amount of gross revenue received by J&J.

45.     As a direct and proximate result of J&J' s violations of 49 C.F.R.§ 376.12(g), Plaintiff was deprived of the ability to accurately calculate the amount of revenue rightfully due to him.

## COUNT III

### Unlawful Provision of Transportation Services by J&J

46.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 45 of this Complaint as if set out fully herein.

47.     Under federal law, an "authorized earner may perform authorized transportation in equipment it does not own only under the following conditions: . . . [t]here shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." Defendant J&J is engaged in the unlawful provision of transportation services in equipment it does not own because the leases governing its use of such equipment fail to conform to 49 C.F.R. Part 376.

48.     J&J' s Lease Agreements with Plaintiff do not contain certain provisions required by 49 C.F.R. § 376.12. By way of illustration and not limitation:

(A)    J&J 's Lease Agreements do not disclose the amount deducted from the owner-operator's compensation that exceeds the actual cost of the items initially paid for by J&J, and the leases do not contain recitations as to how these deductions from compensation are calculated, all in violation of 49 C.F.R. § 376.12 (h);

(B)    J&J's Lease Agreements do not, as required by 49 C.F.R. § 376.12 (h), clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the Plaintiff's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The Plaintiff was further not afforded copies of those documents which are necessary to determine the validity of each charge.

49.    As a direct and proximate result of this violation of federal law, the rights of Plaintiff have been violated and Plaintiff has suffered financial injury.

**COUNT IV**

**Fraudulent Misrepresentation**

50.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 49 of this Complaint as if set out fully herein.

51.     Defendants' aforesaid representations regarding material facts of the gross revenues from the shippers to the Defendants on owner-operator loads, which included Plaintiff's loads, and regarding the shipper's contractual terms and course of business with the Defendants were false and (a) Defendants knew that they were false, or (b) Defendants, without knowledge of the true facts, recklessly and/or negligently misrepresented the true facts, or (c) were made by Defendants by mistake, but with the intention that Plaintiff should rely on these facts.

52.     Plaintiff believed the representations, and in reasonable reliance on the representations, acted to his detriment as set forth herein.

53.     As a proximate result of the aforesaid fraud, Plaintiff suffered damages, including but not limited to loss of compensation, lost income and business opportunities, and lost time value of money.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount of compensatory and punitive damages as will be determined by a jury at a trial of this cause, plus interest and costs.

## COUNT V

## Fraudulent Concealment and/or Nondisclosure

54.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 53 of this Complaint as if set out fully herein.

55.     The Defendants fraudulently concealed and/or failed to disclose to the Plaintiff the following material facts which the Defendants were under a duty to disclose:

(A)     The actual gross revenues from the shippers to the Defendants on owner-operator loads, which included Plaintiff's loads, and regarding the shipper's contractual terms with the Defendants;

(B)     That the shippers were paying to Defendants fuel surcharges and other consideration that were gross revenues for loads picked up and successfully delivered by the owner-operators including the Plaintiff, but Defendants concealed and failed to disclose those facts and those amounts to Plaintiff.

56.     The Defendants' concealment and nondisclosure induced the Plaintiff to continue to perform services and drive the Defendants' loads for less compensation than the Plaintiff was owed, and to accept the lower compensation amounts, which, in turn, perpetuated the wrongful benefit and enriching of the Defendants at the expense of the Plaintiff.

57.     As a proximate result of the aforesaid fraud, Plaintiff suffered damages, including but not limited to loss of compensation, lost income and business opportunities, and lost time value of money.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount of compensatory and punitive damages as will be determined by a jury at trial of this cause, plus interest and costs.

## COUNT VI

### Deceit and/or Fraudulent Deceit

58.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 57 of this Complaint as if set out fully herein.

59.     The aforesaid wrongful acts of the Defendants, including, but not limited to, misrepresenting to Plaintiff that they were getting one amount of gross revenues from shippers on his loads when, in reality, they were getting other amounts of gross revenues on his loads, and misrepresenting to Plaintiff that Costellium had instituted new contractual terms with Defendants that reduced the contracted-for amounts of gross revenues paid by Costellium to Defendants on Plaintiff's loads to the amounts that Defendants put on the Drivers Pay Sheets that Defendant provided to Plaintiff, in order to justify to Plaintiff those false amounts, was done in such

a fraudulent and/or reckless manner as to deceive and mislead the Plaintiff

constitute deceit and/or fraudulent deceit.

60.    The aforesaid wrongful acts of the Defendants, including, but

not limited to, misrepresenting to Plaintiff that they were getting one amount

of gross revenues from shippers on his loads when, in reality, they were

getting other amounts of gross revenues on his loads, and misrepresenting to

Plaintiff that Costellium had instituted new contractual terms with

Defendants that reduced the amounts of gross revenues paid by Costellium

to Defendants on Plaintiff's loads to the amounts that Defendants put on the

Drivers Pay Sheets that Defendant provided to Plaintiff, in order to justify to

Plaintiff those false amounts, were done by the Defendants with the intent to

induce the Plaintiff to continue to perform services and drive the

Defendants' loads for less compensation than the Plaintiff was owed, and to

accept the lower compensation amounts.

61.    The aforesaid wrongful acts of the Defendants, including, but

not limited to, misrepresenting to Plaintiff that they were getting one amount

of gross revenues from shippers on his loads when, in reality, they were

getting other amounts of gross revenues on his loads, and misrepresenting to

Plaintiff that Costellium had instituted new contractual terms with

Defendants that reduced the amounts of gross revenues paid by Costellium

to Defendants on Plaintiff's loads to the amounts that Defendants put on the

Drivers Pay Sheets that Defendant provided to Plaintiff, in order to justify to

Plaintiff those false amounts, were assertions and suggestions of facts that

Defendants knew not to be true, and suppressions of actual and true facts

which Defendants were bound to disclose to the Plaintiff.

62.    As a proximate result of the aforesaid deceit, Plaintiff suffered

damages, including but not limited to loss of compensation, lost income and

business opportunities, and lost time value of money.

## COUNT VII

### Breach of Contract

63.    Plaintiff re-alleges and incorporates the allegations of

paragraphs 1 through 62 of this Complaint as if set out fully herein.

64.    Plaintiff entered into two successive identical annual contracts

with J&J, the first of which was dated May 28, 2018.

65.    By the terms of that agreement, Plaintiff was to be compensated

with "75% of gross revenues" of each load.

66.    Upon information and belief, Defendants consistently reduced

the amount of gross revenue from which Plaintiff's percentage-based

compensation was to be calculated prior to such calculation and without

explanation (other than Defendants' affirmative misrepresentations) or justification so that the Plaintiff actually received less than 75% of the gross revenue.

67.    As a direct and proximate result of Defendants breach of contract, Plaintiff has suffered damages including but not limited to loss of compensation, lost income and business opportunities, and lost time value of money.

## COUNT VIII

### Negligence

68.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 67 of this Complaint as if set out fully herein.

69.    The aforesaid acts and omissions of Defendants, including but not limited to, not accurately receiving, categorizing, accounting for and processing the gross revenues on the Plaintiff's loads, and not accurately calculating and paying the Plaintiff's compensation on Plaintiff's loads, constitute negligence.

70.    As a proximate result of the aforesaid negligence, Plaintiff suffered damages including but not limited to loss of compensation, lost income and business opportunities, and lost time value of money.

## COUNT IX

### Wantonness

71.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 70 of this Complaint as if set out fully herein.

72.    The aforesaid acts and omissions of Defendants, including but not limited to, not accurately receiving, categorizing, accounting for and processing the gross revenues on the Plaintiff's loads, and not accurately calculating and paying the Plaintiff's compensation on Plaintiff's loads, constitute wantonness.

73.    As a proximate result of the wantonness, Plaintiff suffered damages including but not limited to loss of compensation, lost income and business opportunities, and lost time value of money.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully prays for the following relief:

A.  The Court issue proper process to compel the Defendants to answer or otherwise plead to the allegations contained in the Complaint;

B.  Enter a declaratory judgment that Defendant has violated 49 C.F.R. § 376.12;

C.  Enter an Order that Defendants provide to Plaintiff an accounting of all transactions in any way involving or that affected Plaintiff's compensation for all loads that he performed for Defendants and requiring Defendants to recite how the gross revenues on such loads were determined and all facts on which Plaintiff's compensation was calculated or determined;

D.  Enter judgment against Defendant in favor of Plaintiff for restitution and disgorgement of sums unlawfully deducted from compensation in violation of 49 C.F.R. § 376.12 and for damages, all pursuant to 49 U.S.C. § 14704(a)(2), and including pre- and post-judgment interest, as allowed by law;

E.  Award Plaintiff all reasonable attorneys' fees and expenses

pursuant to 49 U.S.C. § 14704(e);

F.     That the Plaintiff be granted judgment against the Defendants for all compensatory and punitive damages as determined by a jury at trial of this cause, plus interest and costs; and

G.     For such other and further relief as the referenced and applicable statutes and common law dictates and that this Court deems equitable, proper, and just, including but not limited to, any injunctive and/or declaratory relief to which Plaintiff may be entitled.

Dated this 24th day of June, 2020.

Respectfully Submitted,

/s/ David A. Hughes
David A. Hughes (ASB-3923-U82D)
Attorney for Plaintiff
2121 14th Street
Tuscaloosa, Alabama 35401
Phone: (205) 523-0463
Fax: (205) 344-6188
E-mail: dhughes@hardinhughes.com

**Jury Demand**

Plaintiff demands trial by struck jury.

**/s/ David A. Hughes**
OF COUNSEL

Service Addresses:

J and J Transports of Alabama, Inc.
c/o its Registered Agent, Ricky Witt
PO Box 156
Bear Creek, AL 35543

Ricky Witt
PO Box 156
Bear Creek, AL 35543

Dustin Witt
PO Box 156
Bear Creek, AL 35543