# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| CLYDE SAVAGE,<br>    Plaintiff,<br><br>v.<br><br>J AND J TRANSPORTS OF ALABAMA, INC., RICKY WHITT, and DUSTIN WITT.,<br>    Defendants. | 6:20-CV-00893-LSC |

**MEMORANDUM OF OPINION**

Plaintiff Clyde Savage brings this action against Defendants J and J Transports of Alabama, Inc. ("J&J"), Ricky Witt, and Dustin Witt, alleging multiple violations of the Federal "Truth-in-Leasing" regulations outlined in 49 C.F.R. § 376.12 as well as state law claims of fraud, breach of contract, negligence, and wantonness. Before this Court is Savage's Motion for Default Judgment and Dismissal of Defendants' Counterclaim. The motion has been fully briefed and is ripe for review. For the reasons stated below, Plaintiff's motion is due to be granted.

**I.    Facts**

    A.   Facts Underlying Savage's Claims

Savage's claims stem from agreements entered by Savage and Defendants beginning on March 26, 2018. (Doc. 1 at 6.) Under the agreements, Savage provided a truck and driver to J&J that it then used to transport goods for different shippers. (*Id.*) Per the agreement, J&J promised to compensate Savage with 75% of the gross revenues paid by the shippers and receivers for each load. (*Id.* at 6-7.) For each load that Savage provided services, J&J provided him with a "Driver Pay Report," which detailed the gross revenue paid by the shippers and multiplied that number by 75% to calculate Savage's total pay. (*Id.* at 8.)

Unbeknownst to Savage at the time, J&J did not properly calculate the gross revenue for each load. First, it failed to include fuel surcharges paid by the shippers in determining the total gross revenue. (*Id.* at 8-9.) Second, it generally reported a lower amount of gross revenues on the Driver Pay Report than they received from the shippers. (*Id.*)

In a September 2019 meeting, Defendants Dustin and Ricky Witt told Savage and other truck owners that one of their main shippers, Constellium, had reduced its contract rates, which would reduce the gross revenue from each load and consequently the compensation Savage and other truck owners would receive. (*Id.* at 9.) Thereafter, Savage began receiving less compensation from J&J for each load shipped for Constellium. (*Id.*) Subsequently, per his contract with J&J and pursuant

to federal law, Savage asked Defendants for documentation of what Constellium and other shippers were paying Defendants for each load so that he could verify the gross revenues used to calculate his compensation. (*Id.* at 10.) However, the defendants refused to provide the documentation. (*Id.*)

Having failed to receive the documentation from them, Savage sought to gain access to the actual gross revenue figures from the shippers themselves. (*Id.*) Savage was successful, and he proceeded to compare the gross revenue calculated by the shippers with the gross revenue calculated by Defendants. (*Id.*) Thereafter, he discovered that the defendants were using lower gross revenues than calculated by the shippers to determine his compensation. (*Id.*) These lower gross revenues were a result of Defendants calculation of the total gross revenue with lower load rates than the shippers were paying and the defendants failure to include fuel surcharges paid by the shippers in the total gross revenue for each load. (*Id.*) Savage confronted Ricky Witt about the discrepancies, and Witt responded by saying "the contract allows us to do anything we want." (*Id.* at 11.) Moreover, Defendants did not provide any explanation for the discrepancies nor did they take any actions to remedy the problem. (*Id.*)

      B. <u>Facts Underlying Plaintiff's Motion for Default Judgment and Dismissal of Defendant's Counterclaim</u>

Unable to settle the issues with the defendants directly, Savage filed the present lawsuit on June 24, 2020. (Doc. 28 at 1.) On September 18, 2020, Defendants filed an answer to Savage's complaint as well as a counterclaim. (*Id.*) Pursuant to Fed. R. Civ. P. 26(f), the parties submitted a discovery plan to this Court on October 13, 2020, and the next day this Court entered a Scheduling Order based on that plan. (*Id.* at 2.) Part of this order included a discovery deadline of June 15, 2021. (*Id.*)

On November 4, 2020, Savage noticed the depositions of the defendants. Doc. 28 at 2. After working with Defendants' counsel, Charley Drummond ("Drummond"), to try and schedule these depositions, the defendants asserted that they could not be present for the depositions until June 17, 2021, two days after the discovery deadline established by this Court. (*Id.*) Nevertheless, Savage agreed to accommodate the defendants and take their deposition on June 17, 2021. (*Id.*) Defendants also noticed the plaintiff's deposition to take place at the same time and place, following their own depositions. (*Id.*) Subsequently, Savage sent new deposition notices to all the defendants for that date. (*Id.* at 3.)

On June 17, 2021, Savage, Drummond, and the Court Reporter arrived at the designated time and place for the depositions. (*Id.*) However, the defendants failed to appear, and they did not contact anyone in advance, including Drummond, to tell

them that they would not be at the depositions. (*Id.*) This was despite Drummond telling the defendants about the potential consequences of not appearing for their depositions, including the potential for entry of default judgment and the dismissal of their counterclaim. (*Id.*)

Because of Defendants' failure to attend the scheduled depositions and comply with this Court's Scheduling Order, Savage moved to dismiss J&J's Counterclaim and all of Defendants' defenses to the Complaint on June 25, 2021. (*Id.* at 4.) On the same day, Drummond filed a motion to withdraw from the case (*Id.*) On July 1, 2021, this Court granted Drummond's motion and set a hearing for August 3, 2021, ordering the defendants to appear and explain their actions. (*Id.* at 5.) The order expressly warned the defendants that default judgment might be entered against them and their counterclaim might be dismissed if they failed to attend the hearing. (*See id.*)

On July 2, 2021, Defendants responded to Plaintiff's motion. (*Id.*) Dustin Witt signed and submitted the response on behalf of the defendants, indicating they failed to appear for their depositions because they had been exposed to COVID-19 on June 13, 2021, four days before the scheduled depositions. (*Id.* at 5-6.) The response contained no explanation as to why neither defendant contacted any of the parties to let them know that they would not be able to attend the deposition. (*Id.* at 6.)

5

Furthermore, on June 17, 2021, Drummond stated on the record that he had spoken with a staff member working at the Defendants' office that workweek, which would have been after the Defendants' alleged exposure to COVID-19 on Sunday, June 13, 2021. (*Id.* at 7.) During the call, Drummond was told that Dustin Witt was at the office and was aware that Drummond was calling but was choosing not to call Drummond back and not to make themselves present for the depositions that they knew were happening. (*Id.*)

Finally, on August 3, 2021, the day of this Court's scheduled hearing at which the defendants were ordered to appear, Plaintiff's counsel arrived at the courthouse for the hearing. (*Id.*) Despite the Court's warning that default judgment might be entered against them and their counterclaim might be dismissed, Defendants failed to appear for the hearing. (*Id.* at 7-8.) Subsequently, Savage filed the present motion, and this Court now grants in part and denies in part Plaintiff's motion.

## II. Analysis

### A. Entry of Default Judgment is Appropriate.

In the Eleventh Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir.2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir.1982) ("Since this

case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). However, a "district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir.1985).

Where, as here, Defendants failed to comply with this Court's orders, failed to appear for their own depositions, and remain unresponsive and uncooperative despite numerous warnings of the consequences of doing so, entry of default judgment is appropriate. The Federal Rules not only permit an entry of default and default judgment but require such an entry where a defendant "has failed to plead or otherwise defend." *See* Fed. R. Civ. P. 55(a) (indicating that the clerk "must enter the party's default" upon a party's failure to "otherwise defend"); *see also* Fed. R. Civ. P. 37(b)(2)(A), (d)(1)(A)(i) (permitting this Court to render a default judgment against a "disobedient party"). In a variety of contexts, courts have entered default judgments against parties who have failed to meaningfully participate in discovery by failing to appear for their deposition. *See*, *e.g.*, *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. Appx. 908, 910 n.2 (11th Cir. 2011); *see also*, *e.g.*, *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). Put simply, while entering a party's default is a "drastic remedy," it remains appropriate to do so "where there has been

a clear record of delay or contumacious conduct." *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978). Such a record is present here. J&J, Ricky Witt, and Dustin Witt have declined to "otherwise defend" themselves in this litigation, thereby stopping this case dead in its tracks.

However, the law is clear: Defendants' failure to appear and the Clerk's Entry of Default do not automatically entitle Savage to a default judgment in the amount requested—or any amount at all. *See Iberiabank v. Case Const.*, *LLC*, No. CIV.A. 15-0226-WS-B, 2015 WL 4624732, at *2 (S.D. Ala. Aug. 3, 2015), *on reconsideration in part sub nom. Iberiabank v. Case Const.*, *LLC,* No. CV 15-0226-WS-B, 2015 WL 5457889 (S.D. Ala. Sept. 16, 2015); *see also Buchanan*, 820 F.2d at 361. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir.1975). Thus, a default judgment can only stand upon a complaint that properly states a claim for relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir.1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").

8

### i. *Truth-in-Leasing Claims*

With these legal principles in mind, this Court has reviewed the Complaint and is satisfied that Counts One, Two, and Three allege viable causes of action under the Federal Truth-in-Leasing regulations and Counts IV, V, VI, VII, VIII, and IX allege viable claims of fraudulent misrepresentation, fraudulent concealment, deceit, breach of contract, negligence, and wantonness under Alabama law. In particular, Counts One, Two, and Three allege that Defendants are actors subject to the Federal regulations, "understat[ed] the gross revenue actually received from the shippers," failed to provide him with freight bills or freight documentation despite his request for such information, and failed to provide clear specification of all items "initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation" as required by the Federal Truth-in-Leasing regulations. (*See* Doc. 1 ¶¶ 23–27, 31, 34, 39, 43, 48.) Thus, Plaintiff is entitled to default judgment under Counts One, Two, and Three.

### ii. *Fraud and Deceit Claims*

Counts Four, Five, and Six allege various claims of fraud and deceit. In support, Savage alleged that Defendants made false statements regarding material facts by failing to properly calculate and understating the gross revenues and refusing

9

to provide documentation in support of their calculations. (Doc. 1 ¶¶ 27–29, 51–53, 59–62.) To sustain a claim of deceit, Savage alleges that these misrepresentations were intentional, reckless, and fraudulent as to satisfy the knowledge requirement. (*See* Doc. 1 ¶¶ 24, 27, 59.) Savage relied on these misrepresentations to his detriment as he suffered "loss of compensation, lost income, [lost] business opportunities, and lost time value of money." (Doc. 1 ¶¶ 53, 62.) Thus, Plaintiff is entitled to default judgment under Counts Four, Five, and Six.

### iii. Breach of Contract Claim

Count Seven alleges breach of contract. To support his claim for breach of contract, Savage alleged that two valid contracts existed between the parties, he performed under those contracts, and that the defendants failed to fulfill their own obligations under the contract. (Doc. 1. ¶¶ 22, 64–67.) Thus, Plaintiff is entitled to default judgment under Count Seven.

### iv. Negligence and Wantonness Claims

To state a claim for negligence under Alabama law, a plaintiff must first show that the defendant owed him a duty. See, e.g., *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) ("The elements of a negligence claim are a duty, breach of that duty, causation, and damages."). Similarly, to state a claim for wantonness, a plaintiff must allege that the defendant owed him a specific duty. See *Alfa Mut. Ins. Co. v. Roush*,

723 So. 2d 1250, 1256 (Ala. 1998) ("'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.") (emphasis added); see also *Perkins Communication, LLC v. D'Shannon Products, Ltd.*, No. 7:15-cv-01172-LSC, 2016 WL 11634348 at *2 (N.D. Ala. Oct. 13, 2016) ("[T]he causes of action for both negligence and wantonness require Plaintiffs to demonstrate that Defendants owed them a duty.").

Generally, in a breach of contract case a plaintiff must establish some independent duty owed by the defendant outside of the defendant's duty to perform under the contract to bring additional claims for negligence or wantonness. See *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1955) (holding that "a negligent failure to perform a contract express or implied is but a breach of the contract"). Thus, "the breach of a duty expressly mentioned or reasonably implied from the contract is a contract claim," not a negligence or wantonness claim. *Perkins*, 2016 WL 11634348 at *2.

Here, Plaintiff's claims for negligence and wantonness fail to identify a specific duty owed to him by the Defendants outside of their contractual duty to perform under the contracts. (*See* Doc. 1 at 21-22). As the presence of a duty is an

essential element for claims of negligence and wantonness, the Plaintiff has failed to state a plausible claim for relief as to these two counts. As such, default judgment is due to be denied as to the Plaintiff's counts of negligence and wantonness.

### B. Plaintiff's Damages

Notwithstanding the propriety of default judgment against defendants, it remains incumbent on Savage to prove his damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F.Supp.2d 588, 593 n. 5 (S.D. Ala. 2007). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). "Rather than merely telling the [c]ourt in summary fashion what its damages are, a plaintiff seeking default judgment must show the [c]ourt what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F.Supp.2d 1287, 1294 (S.D. Ala. 2010).

### i. *Compensatory Damages*

Savage has a made a specific showing that, because of Defendants' actions, he was underpaid in the amount of $39,421.14. (Doc. 28 Ex. A at 5.) Plaintiff calculated this number by subtracting the gross revenues shown on the Driver Pay Reports provided to him by the Defendants from the gross revenues calculated by the shippers and multiplying that number by 75%. (*See* Doc. 28 Ex. A at 5-6.) Based on these calculations, the Court finds that compensatory damages in the amount of $39,421.14 are reasonable in this case.

### ii. *Punitive Damages*

Plaintiff requests punitive damages in the amount of $118,263.42. (Doc. 28 Ex. A at ¶ 14). Under Alabama law, punitive damages may only be awarded in civil tort cases "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." *See* Ala. Code § 6-11-20. Based on the facts alleged in the complaint and other relevant documents this Court finds that Savage has proven his allegations claims of fraud and deceit by clear and convincing evidence, warranting punitive damages. (*See generally* Doc. 1 ¶¶ 24, 27–29, 31, 35, 51–53, 59–61.)

As such, this Court finds that punitive damages as requested by Plaintiff in the amount of $118,263.42, three times the amount of his compensatory damages, is reasonable in this case.

### iii. *Attorney's Fees*

Plaintiff seeks reasonable attorney's fees in the amount of $42,865.37. Under 49 U.S.C. 14704(e), this Court must grant reasonable attorney fees for actions brought under 49 U.S.C. 14102. Plaintiff's attorney presented the calculation of his reasonable attorney fees in a declaration to the Court. (Doc. 28 Ex. B.) Based on this declaration, the Court finds that attorney's fees in the amount of $42,865.37 are reasonable in this case.

### C. Dismissal of the counterclaim is appropriate.

"When a plaintiff fails to prosecute . . . a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). "This rule applies to a dismissal of any counterclaim . . . ." *Id.* 41(c). The legal standard to be applied under Rule 41(b) is whether there is a "clear record of delay or willful contempt and a finding that lesser sanction would not suffice." *Hildebrand v. Honeywell, Inc.*, 622 F. 2d 179, 181 (5th Cir. 1980). Indeed, like an entry of default, dismissing a claim under 41(b) is "an extreme sanction which should only be used where a clear record of delay or contumacious conduct by [a party] exists." *Id.* (internal quotations omitted).

As described above the Defendants conduct has represented a clear record of delay and otherwise contumacious conduct. They have failed to participate in discovery, failed to comply with this Court's orders, and failed to generally engage with Plaintiff in good faith. As such, this Court dismisses Plaintiff's counterclaim with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

### III. Conclusion

Based on the foregoing reasons, Plaintiff's Motion for Default Judgment will be granted for his Truth-in-Leasing claims (Counts I, II, and III), fraud claims (Counts IV, V, and VI), and breach of contract claim (Count VII). Plaintiff's Motion for Default Judgment will be denied for his negligence and wantonness claims (Counts VIII and IX). Damages will be awarded to the Plaintiff as follows: $39,421.14 in compensatory damages; $118,263.42 in punitive damages; and $42,865.37 in reasonable attorney fees. Finally, the Plaintiff's motion to dismiss the Defendants' counterclaim with prejudice will be granted.

**DONE** and **ORDERED** on November 3, 2021.

_____
L. Scott Coogler
United States District Judge

206888